WEILEP, *County Treasurer, et al.* v. AUDRAIN *et al.*

No. 2303.    Opinion Filed November 26, 1912.

(128 Pac. 254.)

1.    TAXATION—Property Subject—Indian Allotments. The portions of the allotments of members of the Cherokee Tribe of Indians designated as homesteads, in accordance with the provisions of section 13 of the Cherokee Agreement of July 1, 1902 (Act July 1, 1902, c. 1375, 32 St. at L. 717), are exempt from taxation so long as they are held by the allottees.

2.    SAME. The Act of Congress of May 27, 1908 (Act May 27, 1908, c. 199, 35 St. at L. 312), so far as it attempts to subject to taxation lands of Cherokees exempt from taxation by the provisions of section 13 of the Cherokee Agreement of July 1st, 1902 (Act July 1, 1902, c. 1375, 32 St. at L. 717), is unconstitutional.

(Syllabus by Rosser, C.)

*Error from District Court, Ottawa County;*
*T. L. Brown, Judge.*

Suit by Frank G. Audrain and others against J. F. Weilep, county treasurer of Ottawa county, and others, to enjoin the levy and collection of taxes on allotted lands of plaintiff. Decree enjoining the levy or collection of taxes on homesteads, and defendants bring error. Affirmed.

*E. C. Fitzgerald* and *Vern E. Thompson,* for plaintiffs in error.

*O. L. Rider,* for defendants in error.

Opinion by ROSSER, C. This was an action by Frank G. Audrain and a large number of other persons, all members of the Cherokee Tribe of Indians, plaintiffs, against J. F. Weilep, as county treasurer of Ottawa county, J. E. Supernaw, John Stevens, and W. I. Bingham, as county commissioners of Ottawa county, and W. R. Walker, as county clerk of Ottawa county, to enjoin them from subjecting the lands of plaintiffs to taxation. The petition alleged that plaintiffs were members of the Cherokee Tribe of Indians, and that the lands described in the petition were their respective individual allotments, allotted to them under and

by virtue of the terms of the Cherokee Agreement contained in the Act of Congress approved July 1, 1902, and ratified by the voters of the Cherokee Nation at an election held August 7, 1902. Act July 1, 1902, c. 1375, 32 St. at L. 717. The trial court adjudged the homesteads of plaintiffs to be exempt from taxation, and perpetually enjoined the defendants and their successors in office from subjecting so much of the lands as were homesteads to taxation. From this judgment defendants prosecute this appeal.

Section 13 of the Cherokee Agreement, as contained in the Act of Congress of July 1, 1902, ratified by the voters of the Cherokee Nation August 7, 1902 (32 St. at L. 717), is as follows:

"Each member of said tribe shall at the time of the selection of his allotment designate as a homestead out of said allotment land equal in value to forty acres of the average allotable land of the Cherokee Nation, as nearly as may be, which shall be inalienable during the lifetime of the allottee not exceeding twenty-one years from the date of the certificate of allotment. Separate certificate shall issue for said homestead. During the time said homestead is held by the allottee the same shall be nontaxable and shall not be liable for any debt contracted by the owner thereof while so held by him."

It is contended by plaintiffs in error (defendants below) that the Act of Congress of May 27, 1908 (Act May 27, 1908, c. 199, 35 St. at L. 312), entitled "An act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes," rendered the land taxable. It is the contention of the defendants in error that that act was unconstitutional, so far as it attempted to render taxable the lands belonging to members of the tribe which were nontaxable under the provisions of the Cherokee Agreement. The provisions of that act material to the controversy in this case are contained in a portion of section 1 and in section 4 thereof. The portion of section 1 material to this case is as follows:

"That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands including

homesteads of said allottees enrolled as intermarried whites, as freedman, and as mixed-blood Indians having less than half Indian blood, including minors, shall be free from all restrictions. All lands except homesteads of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions."

Section 4 is as follows:

"That all land from which restrictions have been removed or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes: Provided, that allotted lands shall not be subjected or held liable to any form of personal claim, or demand, against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law."

It is not necessary to enter into a discussion of the questions involved. The cases of *Choate v. Trapp*, 224 U. S. 665, 32 Sup. Ct. 565, 56 L. Ed. 941, and *English v. Richardson*, 224 U. S. 680, 32 Sup. Ct. 571, 56 L. Ed. 949, settle the question in favor of the defendants in error. The case of *Choate v. Trapp, supra,* was decided with reference to lands in the Choctaw Nation, and that of *English v. Richardson, supra,* with reference to lands in the Creek Nation, but the principle involved is applicable to the case at bar. There is very little difference between the wording of the treaty with the Cherokee Tribe and the treaties with the Choctaws and Chickasaws and the Creeks. The Creek Treaty especially is almost exactly the same as the Cherokee.

There are a number of questions raised in the briefs of plaintiff in error, but, in view of this disposition of the main question, none of the others are important. The judgment should be affirmed.

By the Court: It is so ordered.